IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,
Plaintiff,

v.

SHAUNDALE J. JOHNSON,
Defendant.

Case No. 17–CR–40031–JPG

**MEMORANDUM & ORDER**

Before the Court is Defendant Shaundale J. Johnson's Motion for Compassionate Release, (ECF No. 52), and Supplemental Motion for Compassionate Release, (ECF No. 67). The Government responded, (ECF No. 72). For the reasons below, the Court **DENIES** Johnson's motions.

I. PROCEDURAL & FACTUAL HISTORY

A. The Conviction

In 2017, a federal grand jury in this District indicted Johnson for distribution of methamphetamine. (Indictment 1, ECF No. 1). He pleaded guilty the next year, and the Court sentenced him to a 204-month term of imprisonment. (Judgment 1–2, ECF No. 30). He is currently incarcerated at Federal Correctional Institution ("FCI") Greenville in Illinois. (Johnson's Mot. for Compassionate Release at 5). His projected release date is December 20, 2031. *See Find an Inmate*, Federal Bureau of Prisons [hereinafter "BOP"] (last visited Apr. 19, 2021).[1]

---

[1] *Available at* https://www.bop.gov/inmateloc/.

### B. The Presentence Investigation Report

Before sentencing, the Court considered the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office, which provided information about Johnson's background and the nature and circumstances of the offense. (PSR 1, ECF No. 22).

According to the PSR, an investigation "conducted by the Southern Illinois Enforcement Group . . . revealed that Shaundale Johnson was involved in the distribution of crystal methamphetamine in late 2016 and early 2017." (*Id.* at 3). A confidential source informed law enforcement that Johnson "typically sold drugs from his residence in Marion during school hours while his children were not home." (*Id.*). Indeed, Johnson ultimately "admitted that he began selling crystal methamphetamine in approximately September 2016 to help pay the bills." (*Id.* at 4). The source bought nearly 60 grams of "crystal methamphetamine from Shug" (Johnson), who "also had a steady supply of crack cocaine and powder cocaine." (*Id.* at 3, 5). The source also advised that "Johnson was trying to sell three or four firearms, which were being held by" another individual. (*Id.* at 3). Johnson himself "kept a small handgun in the center console of the vehicle he used to make drug deliveries." (*Id.* at 4). A warrant search ultimately uncovered "Xanax bars (33), 0.5-gram cocaine, cannabis (288 grams), and purported ecstasy from the residence. Miscellaneous items associated with the use and distribution of controlled substances were also located . . . ." (*Id.*).

Before committing this offense, Johnson had 10 prior convictions. (*Id.* at 8–13). This includes a 2000 conviction for delivery of a controlled substance after Johnson sold crack cocaine to another confidential source; a 2002 conviction for trespassing and resisting arrest after Johnson "led officers on a foot pursuit" and had a loaded weapon in his vehicle; a 2009 conviction for conspiracy to distribute crack cocaine; and a 2016 conviction for forgery. (*Id.*).

**C. Johnson's Motions for Compassionate Release**

In 2020, Johnson moved for a sentence modification under 18 U.S.C. § 3582(c)(1)(A), also called *compassionate release*. (Johnson's Mot. for Compassionate Release at 1). He contends that serious medical conditions—"Type II adult-onset diabetes, uncontrolled hypertension as evidenced by his 145/95 blood pressure readings, a BMI classification of morbidly obese, and numerous respiratory and breathing problems such that he is now using a CPAP machine"—make him especially vulnerable to the COVID-19 virus. (Johnson's Suppl. Mot. for Compassionate Release at 4). He already contracted the virus, however, and survived. (Gov't's Resp. at 2). Even so, Johnson argues that his increased risk of experiencing serious complications if he contracts COVID-19 **again** is an *extraordinary and compelling* reason warranting his release. (*Id.*).

The COVID-19 virus, of course, is now a global pandemic. At FCI Greenville, no inmates currently have COVID-19, 706 have recovered, and none have died. *Coronavirus*, BOP (last visited Apr. 19, 2021).[2]

**II. LAW & ANALYSIS**

The Court recognizes that compassionate release is appropriate for some defendants considering the COVID-19 pandemic. Even so, the defendant bears the burden of showing <u>not only</u> that he faces an increased risk from the virus, <u>but also</u> that incarceration is no longer necessary to advance the purposes of punishment (i.e., justice, deterrence, incapacitation, and rehabilitation). Johnson failed to meet that burden.

---

[2] *Available at* https://www.bop.gov/coronavirus.

### A. Legal Standard

District courts generally "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). That said, an exception exists for when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* § 3582(c)(1)(A)(i). Even then, however, the sentencing judge must still "consider[] the factors set forth in section 3553(a) to the extent that they are applicable . . . ." *Id.* § 3582(c)(1)(A). The burden of proof rests on the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The § 3553(a) factors are as follows:

(1) the nature and circumstances of the offense and the history and characteristic of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . or;

    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . . ;

> (5) any pertinent policy statement—
>
>> (A) issued by the Sentencing Commission . . . ; and
>>
>> (B) that . . . is in effect on the date the defendant is sentenced[;]
>
> (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Similarly, the Bureau of Prisons considers the following nonexclusive factors to determine whether extraordinary and compelling reasons warrant a sentence modification:

- Nature and circumstances of the inmate's offense.
- Criminal history.
- Comments from victims.
- Unresolved detainers.
- Supervised release violations.
- Institutional adjustment.
- Disciplinary infractions.
- Personal history derived from the PSR.
- Length of sentence and amount of time served. . . .
- Inmate's current age.
- Inmate's age at the time of offense and sentencing.
- Inmate's release plans (employment, medical, financial).
- Whether release would minimize the severity of the offense.

Federal Bureau of Prisons, Program Statement No. 5050.50, *Compassionate Release/Reduction in Sentence* (2019).

"The judge need not address every factor 'in checklist fashion, explicitly articulating its conclusions regarding each one.'" *See United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). Rather, it is enough to "simply give an adequate statement of reasons, consistent with § 3553(a), for thinking" that a sentence modification is—or is not—appropriate. *See Shannon*, 518 F.3d at 496; *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020) ("[A] district court's discretion in this area—as in all sentencing matters—is broad.").

### B. The § 3553(a) Factors

The Court acknowledges the particular danger posed by the COVID-19 pandemic to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Director of the Bureau of Prisons is in the best position to know which inmates are most vulnerable to infection and whether they still pose a public-safety risk. And since March 2020, BOP has transferred nearly 8,000 inmates that it has identified as "suitable for home confinement" and has administered over 100,000 doses of the COVID-19 vaccine. *Coronavirus*, BOP (last visited Apr. 19, 2021).[3] So although not bound by any BOP determination, the Court "will give the Director's analysis substantial weight . . . ." *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

---

[3] *Available at* https://www.bop.gov/coronavirus/.

With that in mind, the § 3553(a) factors weigh against a sentence modification here. First, the Court recognizes that Johnson suffers from serious medical conditions that might make him more vulnerable to COVID-19. That said, he already had the virus and survived. And the Bureau of Prisons is now administering vaccines, which will reduce future cases. More importantly, Johnson's assertion that he "had limited criminal history prior to his conviction for the instant offense" is unsupported.(Johnson's Suppl. Mot. for Compassionate Release at 4). Rather, he has an extensive criminal history, proving time and again that poses a danger to the community. Indeed, he committed the instant offense having already received several drug convictions (among others). Public safety is paramount; and given Johnson's history and the time remaining on his sentence, the Court will not leave the matter to chance. So despite the COVID-19 pandemic and the risks it poses, Johnson's incarceration remains necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to adequately deter Johnson and others from committing further crimes, and to protect the public.

### III.  CONCLUSION

The Court **DENIES** Defendant Shaundale J. Johnson's Motion for Compassionate Release and Supplemental Motion for Compassionate Release.

**IT IS SO ORDERED.**

**Dated: Monday, April 19, 2021**

**S/J. Phil Gilbert**
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**
